# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GLEN N. BENSON,                    :
                                   :
            Plaintiff,             :        Civil Action No.:      09-1931 (RMU)
                                   :
      v.                           :        Re Document Nos.:      12, 13
                                   :
KATHLEEN SEBELIUS,                 :
Secretary of the Department of     :
Health and Human Services,         :
                                   :
            Defendant.             :

## MEMORANDUM OPINION

### DENYING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING THE DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

The plaintiff, as the survivor and administrator of his mother's estate, received a $90,000 settlement for a wrongful death and survival action that he had previously commenced in a Pennsylvania state court. Before her death, the plaintiff's mother's medical care was paid for by Medicare, a federal program administered by the Centers for Medicare and Medicaid Services ("CMS") of the Department of Health and Human Services ("HHS"). Under protest by the plaintiff, CMS collected a sum from the wrongful death and survival action settlement as reimbursement for the portion of his mother's medical costs incurred by Medicare.

The plaintiff commenced this action, seeking review of the reimbursement amount collected by CMS and asserting that he was deprived of his settlement funds without due process. The matter is now before the court on the parties' cross-motions for summary judgment. Because the amount collected by CMS is in accordance with the applicable laws regulating the reimbursements given to Medicare from a wrongful death settlement and because

the plaintiff was not denied due process, the court denies the plaintiff's motion for summary judgment and grants the defendant's cross-motion for summary judgment.

## II.  BACKGROUND

### A.  The Medicare Secondary Payer Provision

Medicare provides health insurance to the elderly and disabled by entitling eligible beneficiaries to have payments made on their behalf for care and services rendered by health care providers.  *See generally* 42 U.S.C. §§ 1395 *et seq.*  CMS is responsible for administering the Medicare program.  *See id.* § 1395h.

In 1980, Congress enacted the Medicare Secondary Payer Provision ("MSP") which made Medicare a secondary payer plan.  *See* 42 U.S.C. § 1395y(b).  As a secondary payer plan, any payment made by CMS on behalf of a Medicare beneficiary is conditional and subject to reimbursement by any party that receives a "primary payment."  *Id.* § 1395y(b)(2)(B)(i).  A primary payment is any payment made by a non-Medicare entity for the medical expenses of a Medicare beneficiary based on that entity's obligation to pay for those medical services.  42 C.F.R. § 411.21.  For instance, if Medicare's coverage overlaps with that of another insurer, CMS may seek reimbursement from that insurer for the medical expenses that were already paid through Medicare.  42 U.S.C. § 1395y(b)(2)(B)(ii); 42 C.F.R. § 411.21.

Similarly, and of particular relevance here, CMS may seek reimbursement for Medicare-disbursements from the recipient of a judicial settlement.  42 C.F.R. § 411.22(a)-(b)(3).  When the primary payer is the recipient of a settlement, however, CMS's reimbursement is reduced by its portion of the legal fees and costs that were incurred in obtaining the settlement ("the procurement costs").  *Id.* § 411.37(a).  Moreover, if a settlement covers both medical and

nonmedical costs, CMS's reimbursement may be apportioned so as to reach only the portion of the settlement allocated to cover medical costs. *See Cox v. Shalala*, 112 F.3d 151, 154-55 (4th Cir. 1997); *Denekas v. Shalala*, 943 F.Supp 1073, 1080 (S.D. Iowa 1996).

In order to collect its reimbursement pursuant to the MSP, CMS may intervene in an action involving the medical costs of a Medicare beneficiary but also has a right of subrogation. 42 U.S.C. §§ 1395y(b)(2)(B)(iii)-(iv). The selection of one avenue over another does not affect CMS's right of recovery. *Zinman v. Shalala*, 67 F.3d 841, 844-45 (9th Cir. 1995).

## B. Factual & Procedural Background

In May 2003, the plaintiff's elderly mother suffered various injuries after falling in her home. Compl. ¶ 7. As a result, the plaintiff's mother was hospitalized and treated for a fracture of her right radius, a radial periorbital hematoma and a contusion. *Id*. ¶ 8. During her hospital stay, however, she was also treated for medical conditions not directly related to these injuries. *Id*. ¶ 9. In total, the plaintiff's mother received thirty-eight medical treatments, only one of which, the plaintiff claims, was related to the fall – the "fracture of the surgical neck humerous [sic]." *Id.* The plaintiff's mother died ten days after the accident. *Id*. ¶ 10.

In July 2005, the plaintiff, in his capacity as survivor and administrator of his mother's estate, filed a wrongful death and survival action against his mother's landlord in the Court of Common Pleas of Pennsylvania. *Id*. ¶ 11; A.R. at 591. In pursuing that action, the plaintiff expressly included his mother's medical costs in his wrongful death claim. A.R. at 595. There is no indication, however, that the plaintiff paid any of his mother's medical expenses.

Because the plaintiff's mother was a Medicare beneficiary at the time of her injury, CMS had paid for her hospital costs, which totaled $40,213.74. Pl.'s Mot. at 3. In December 2006, CMS notified the plaintiff of this amount, informing him that Medicare's initial payment of his

mother's medical expenses was conditional to reimbursement from any potential settlement award.  A.R. at 708.  CMS also explained to the plaintiff and his counsel that they had an opportunity to contest the charges prior to payment.  *Id.*

The parties in the wrongful death and survival action eventually settled for $90,000, with 80% of that amount allocated in settlement for the wrongful death claim ("wrongful death settlement award") and 20% allocated in settlement for the survival claim ("survival settlement award").  Compl. ¶ 11.  Although the settlement did not specify a precise numerical value allocated for medical costs, it did release the landlord from "[a]ll liens against the proceeds of this settlement" including liens related to his mother's medical expenses.  A.R. at 595.

In May 2007, the Pennsylvania court issued an order approving the parties' settlement agreement.  A.R. at 47.  This order also specified that $40,213.74 would be "held in escrow pending disposition" of a lien that had been asserted by Medicare.  *Id.*

In November 2007, CMS notified the plaintiff that pursuant to the MSP, he was required to reimburse CMS for his mother's medical costs which had been paid through Medicare and for which he had received a settlement award.  A.R. at 685-89.  CMS also informed the plaintiff that he had the right to appeal this determination within 120 days.  *Id.*  CMS advised the plaintiff that he was required to pay $25,868.58, the final amount due after deducting CMS's share of the procurement costs, within sixty days or risk incurring interest and penalties.  *Id.* at 687-88.

To avoid interest and penalties, the plaintiff paid the full amount under protest and appealed to HHS's initial review board.  Compl. ¶ 16.  After considering the plaintiff's case, the review board upheld CMS's demand for $25,868.58.  *Id.*  The plaintiff unsuccessfully appealed that decision to both the Office of Medicare Hearings and Appeals and the Medicare Appeals Council.  *Id.* ¶¶ 17-18.  The Medicare Appeals Council ultimately held that CMS's recovery

rights are broad and, as defined in the MSP manual interpreting the statute, allocations of settlements that are not the result of an adjudicatory process, like the allocation at issue here, do not limit those rights.  A.R. at 06.

The plaintiff subsequently commenced this action seeking judicial review of the Medicare Appeals Council's final decision.  *See generally* Compl.  Both parties have filed cross-motions for summary judgment.  *See generally* Pl.'s Mot.; Def.'s Cross-Mot.  With these motions now ripe for adjudication, the court turns to the parties' arguments and the applicable legal standards.

## III.  ANALYSIS

### A.  Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine which facts are "material," a court must look to the substantive law on which each claim rests.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine dispute" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action.  *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on cross-motions for summary judgment, the court shall grant summary judgment only if one of the parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed.  *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 658 F. Supp. 2d 217, 224 (D.D.C. 2009) (citing *Rhoads v. McFerran*, 517 F.2d 66, 67 (2d Cir. 1975)).  To prevail on a motion for summary judgment, the moving party must show that

the opposing party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the opposing party, a moving party may succeed on summary judgment. *Id.*

The opposing party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006).

### B. Legal Standard for Judicial Review of Agency Actions

The Administrative Procedures Act entitles "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . to judicial review thereof." 5 U.S.C. § 702. Under the APA, a reviewing court must set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Id. § 706; *Tourus Records, Inc. v. Drug Enforcement Admin.*, 259 F.3d 731, 736 (D.C. Cir. 2001). In making this inquiry, the reviewing court "must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 378 (1989) (internal quotations omitted). At a minimum, the agency must have considered relevant data and articulated an explanation establishing a "rational connection between the facts found and the choice made." *Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 626 (1986); *Tourus Records*, 259 F.3d at 736. An agency action usually is arbitrary or capricious if

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to evidence before the agency, or is

so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Veh. Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); see also *County of L.A. v. Shalala*, 192 F.3d 1005, 1021 (D.C. Cir. 1999) (holding that "[w]here the agency has failed to provide a reasoned explanation, or where the record belies the agency's conclusion, [the court] must undo its action").

As the Supreme Court has explained, however, "the scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Veh. Mfrs. Ass'n*, 463 U.S. at 43. Rather, the agency action under review is "entitled to a presumption of regularity." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), abrogated on other grounds by *Califano v. Sanders*, 430 U.S. 99 (1977).

"The requirement that agency action not be arbitrary or capricious includes a requirement that the agency adequately explain its result." *Pub. Citizen, Inc. v. Fed. Aviation Admin.*, 988 F.2d 186, 197 (D.C. Cir. 1993). This requirement is not particularly demanding, however. Id. Nothing more than a "brief statement" is necessary, as long as the agency explains "why it chose to do what it did." *Tourus Records*, 259 F.3d at 737. If the court can "reasonably discern[]" the agency's path, it will uphold the agency's decision. *Pub. Citizen*, 988 F.2d at 197 (citing *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)).

### C. The Court Grants the Defendant's Cross-Motion for Summary Judgment

### 1. The Medicare Secondary Payer Provision Entitles CMS to Reimbursement for the Plaintiff's Mother's Medical Expenses

The plaintiff argues that CMS may only recover from a settlement award received by a Medicare beneficiary's estate, *i.e.* his mother's estate, and because under Pennsylvania law his wrongful death settlement is not a part of his mother's estate, the plaintiff concludes that CMS may not seek reimbursement from the wrongful death settlement award. Pl.'s Mot. at 7. The

plaintiff also contends that the wrongful death settlement award includes only a portion of the medical expenses that Medicare incurred on behalf of his mother and that any recovery by CMS should therefore be limited to only that portion. Pl.'s Mot. at 5. More specifically, the plaintiff contends that CMS's reimbursement should be limited to only the costs associated with the treatment of his mother's "fracture of surgical neck of humerus,"[1] which he asserts is the only treatment she received "related to the fall."[2] Compl. ¶ 3.

The defendant argues that CMS is entitled to reimbursement from the wrongful death settlement award for all of the medical costs incurred during the plaintiff's mother's hospitalization. Def.'s Mot. at 11. The defendant contends that the wrongful death settlement award covered all the costs of the plaintiff's mother's hospitalization, as it "did not release only the claim for [medical] services provided to treat his mother's fractured shoulder" but also released the plaintiff's mother's landlord for damages associated with "the post-fall complications and his mother's death." *Id.* at 11. Additionally, the defendant notes that the fact that the plaintiff claimed all of his mother's medical expenses in pursuing his wrongful death claim entitles Medicare to be reimbursed for the full medical expenses from the wrongful death settlement award. *Id.* at 12.

---

[1]    The plaintiff calculates the medical expenses related to his mother's slip and fall accident less CMS's share of procurement costs to be $2,368.58. Compl. ¶ 14.

[2]    The plaintiff also asserts that by "choosing not to intervene" and participate in the settlement negotiations, CMS "implicitly accepted the terms of the settlement" and is now barred from recovering from the plaintiff's wrongful death settlement. Pl.'s Mot. at 9-10. The defendant responds that under the MSP it "has both a subrogation right and an independent right to recovery." Def.'s Cross-Mot. at 14. The MSP clearly allows CMS to seek reimbursement of a Medicare beneficiary's medical costs either by commencing an independent action against the beneficiary or her estate or by enforcing its right of subrogation. 42 U.S.C. §§ 1395y(b)(2)(B)(iii)-(iv). Accordingly, CMS did not waive its right to reimbursement by choosing not to intervene in the underlying action. *See Zinman v. Shalala*, 67 F.3d 841, 844-45 (observing that "to define [CMS's] right to recover its conditional payment solely by reference to its right of subrogation would render superfluous the alternative remedy of the independent right of recovery").

In advancing his argument that CMS is only entitled to recover from the settlement award received by a Medicare beneficiary's estate, the plaintiff relies entirely on two decisions that applied the MSP to the settlement of wrongful death claims: *Denekas v. Shalala*, 943 F. Supp. 1073 (S.D. Iowa 1996) and *Bradley v. Sebelius*, 621 F.3d 1330 (11th Cir. 2010). Compl. ¶ 21; Pl.'s Supplemental Reply. As discussed below, his reliance on both is misplaced.

In *Denekas*, the plaintiffs received a settlement in a wrongful death action governed by Iowa law after the death of their father. 943 F. Supp at 1075-76. CMS sought reimbursement from this award for the medical costs it had previously incurred on behalf of the plaintiffs' father, a Medicare beneficiary. *Id.* at 1075. The plaintiffs brought suit, seeking a declaratory judgment that CMS was not entitled to reimbursement from their wrongful death claim settlement award. *Id.* at 1076. In granting judgment to the plaintiffs, the *Denekas* court underscored that the plaintiffs had not claimed any medical costs in pursuing their wrongful death actions, and, indeed, noted that Iowa's wrongful death statute precluded the plaintiffs from claiming any such costs. *Id.* at 1079-80. Because no medical costs were sought in the wrongful death action, the *Denekas* court reasoned that CMS was not entitled to recover Medicare payments from the plaintiffs' wrongful death settlement. *Id.* at 1080.

The plaintiffs in *Bradley* also challenged CMS's right under the MSP to recover medical costs from a wrongful death settlement award. 621 F.3d at 1330. The underlying wrongful death claim in *Bradley* was brought by both the decedent's surviving children, who had not sought medical costs in their wrongful death claim, and the decedent's estate which had asserted medical costs. *Id.* at 1337. Through a probate court order, the wrongful death settlement was apportioned between the survivors and the estate. *Id.* at 1333-4. The Eleventh Circuit subsequently held that the MSP entitled CMS to recover medical expenses and costs from the

decedent's estate. *Id.* at 1337. The *Bradley* court did not, however, allow CMS to seek reimbursement from the portion of the settlement allocated to the surviving children because their wrongful death claims had involved only "non-medical tort property claims," such as loss of companionship, which represents "a property right belonging to the child[, n]ot the Secretary of HHS." *Id.* (observing that the underlying settlement "involved the medical expenses and costs recovered by the estate (and subject to the MSP) *along with* the non-medical, tort property claims of the surviving . . . children for lost parental companionship, etc., under state law, (*and not subject to the MSP*)"). Thus, the *Bradley* court, like the *Denekas* court, ruled that the MSP does not entitle CMS to recover medical costs from a wrongful death settlement award in which the plaintiffs never claimed medical costs in pursuing the wrongful death claim.

Here, unlike the survivor plaintiffs in *Denekas* and *Bradley*, the plaintiff claimed his mother's medical costs in pursuing his wrongful death action. *See* A.R. at 595 (claiming "damages for the pecuniary losses occasioned by the death of [his mother] as well as for medical expenses"); 42 Pa.C.S.A. § 8301(c) ("[T]he plaintiff shall be entitled to recover . . . damages for reasonable hospital, nursing, medical, funeral expenses . . . necessitated by reason of injuries causing death."). Moreover, the evidence suggests that these claimed medical expenses were taken into consideration in calculating and negotiating the ultimate wrongful death settlement award. Tellingly, as part of the resulting settlement, the plaintiff agreed to release his mother's landlord from "any and all claims and rights," including those associated with medical liens. A.R. at 599. This release suggests that the medical expenses claimed by the plaintiff in his wrongful death complaint were contemplated by the parties in negotiating and ultimately reaching a settlement. *See id.*; *Mathis v. Leavitt*, 554 F.3d 731, 733 (8th Cir. 2009) ("Because appellants claimed all damages available under the Missouri wrongful death statute, the

settlement, which settled all claims brought, necessarily resolved the claim for medical expenses."). Additionally, CMS had notified the plaintiff prior to the parties' settling the case that it would be seeking reimbursement for the medical costs incurred by Medicare from any potential settlement. *Id.* at 708. Notwithstanding this advertence, the plaintiff did not specify that the settlement did not include medical expenses nor attempt to allocate a specific amount of the settlement to medical expenses. *See id.* at 599. Indeed, the state court, in approving the settlement agreement, ordered that the full amount of the medical expenses, $40,213.74, be taken from the settlement funds and held in escrow pending the disposition of CMS's lien. *Id.* at 47.

Importantly, the plaintiff provides no evidence to suggest that the wrongful death settlement did not include the medical expenses incurred by Medicare. *See generally* Pl.'s Mot.; Pl.'s Reply. Nor has the plaintiff provided any evidence that would indicate that the parties' wrongful death settlement accounted for only those medical treatments associated with his mother's "fracture of surgical neck of humerous [sic]," which, according to the plaintiff, was the only medical treatment "related to the fall." *Id.*

Because the rulings in *Denekas* and *Bradley* were limited to situations in which the plaintiffs had not claimed medical expenses in their wrongful death settlement, and because the plaintiff's wrongful death settlement does appear to have included medical costs, the cases are inapposite. Nor do these cases in any way indicate that the MSP generally disallows CMS from seeking reimbursement from a survivor's wrongful death settlement. *See generally Denekas*, 943 F. Supp. at 1073; *Bradley*, 621 F.3d at 1330.

The MSP is clear: if a third party is responsible for injuring a qualified individual and Medicare pays for the resulting medical treatment, the payment is considered conditional and repayment to Medicare is required. *See Mathis*, 554 F.3d at 732 (8th Cir. 2009) (noting the

"crystalline statutory language" in upholding CMS's right to reimbursement from the proceeds of a wrongful death settlement).  In this case, the plaintiff received a settlement from a wrongful death action that included compensation for his mother's medical costs, *see* A.R. at 595, and Medicare is thus entitled to reimbursement from those proceeds, *see Mathis*, 554 F.3d at 733 (holding that CMS was entitled to recover under the MSP because the plaintiff had, in the underlying wrongful death action, "claimed all damages available under the [applicable] wrongful death statute" and "the settlement, which settled all claims brought, necessarily resolved the claim for medical expenses"); *Cox v. Shalala*, 112 F.3d 151, 154-55 (4th Cir. 1997) (determining that Medicare was entitled to reimbursement for medical expenses from the proceeds of a wrongful death settlement because the settlement included recovery for decedent's medical expenses); *see also Brown v. Thompson*, 374 F.3d 253, 262 (4th Cir. 2004) (holding that CMS was entitled to reimbursement from the proceeds of a medical malpractice settlement pursuant to the MSP).

Accordingly, the court determines that the Medicare Appeals Board did not err in allowing CMS to recover from the plaintiff's wrongful death claim settlement award.  Moreover, absent any evidence indicating that the plaintiff in any way limited the medical expenses in his underlying wrongful death settlement, the court declines to hold that the Medicare Appeals Board erred by allowing CMS to be reimbursed for the full costs of the thirty-eight medical treatments the plaintiff's mother received during her hospital stay.

### 2. The Plaintiff's Fifth Amendment Due Process Rights Were Not Violated

### a. The Post-Deprivation Hearings Did Not Violate the Plaintiff's Due Process Rights

The plaintiff argues that by obtaining reimbursement under threat of high interest, CMS

deprived him of his property without due process, in violation of the Fifth Amendment. Compl. ¶ 25; Pl.'s Reply 5-6. The defendant argues that the plaintiff had no property interest in the portion of the settlement award related to his mother's medical costs and thus was not unconstitutionally deprived of his property. Def.'s Cross-Mot. at 15-16.

The Fifth Amendment requires that no person be deprived of his property without due process of law. U.S. CONST. amend. V. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). In determining whether "an appropriate hearing has been provided at a meaningful time and in a meaningful matter," the court considers three factors:

> [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*Mathews*, 424 U.S. at 335; *see also Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 690-691 (D.C. Cir. 2009). All the while the court should remain mindful that "due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334 (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

Assuming *arguendo* that the plaintiff maintained a property interest in the portion of the settlement award at stake, the court considers whether the plaintiff received an appropriate hearing by weighing all of the factors as set forth in *Mathews v. Eldridge*. First, the court observes that the plaintiff's "private interest" is his potential use of the settlement award money which he gave to CMS under the threat of high interest. A monetary interest, unlike, for

instance, a property interest in one's employment or welfare assistance, is "completely compensable by a post-deprivation decision." *City of Los Angeles v. David*, 538 U.S. 715, 717-18 (2003) (noting that "any loss in the time value of the money can be compensated by an interest payment" and contrasting a monetary interest deprivation with "[t]he temporary deprivation of a job . . . [which] typically works a far more serious harm"); *UDC Chairs Chapter, Am. Ass'n of Univ. Professors v. Bd. of Trustees of the Univ. of the Dist. of Columbia*, 56 F.3d 1469, 1474 (D.C. Cir. 1995). Thus, this factor does not weigh in favor of finding that the plaintiff was deprived of a hearing at a meaningful time and in a meaningful manner. *City of Los Angeles*, 538 U.S. at 717-18; *UDC Chairs*, 56 F.3d at 1474.

Next, the court considers the risk that the procedures used by CMS resulted in the erroneous deprivation of the plaintiff's interest, as well as the "probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. In evaluating this factor, the court considers "the nature of the relevant inquiry." *Id.* at 343. If an agency's decision requires a rigorous analysis of the facts specific to a particular case prior to determining whether a deprivation is appropriate, then the value of a pre-deprivation hearing is increased. *Id.* at 344. A pre-deprivation hearing is substantially less valuable, however, when an agency's decision turns on "routine, standard and unbiased" information, *id.* at 344, or simply requires the implementation of an institutional policy, *see UDC Chairs*, 56 F.3d at 1474 (noting that if "the deprivation turns on a policy decision and not on an individual's characteristics, a pre-deprivation hearing would do little to reduce the risk of erroneous deprivation").

Here, CMS's decision did not turn on a fact-intensive inquiry, but rather appears to have been a straightforward application of routine regulatory procedures allowing CMS to seek reimbursement under the MSP. *See* A.R. at 687. Indeed, the MSP regulations outline specific

"rules" which apply to CMS's recovery of conditional payments made from Medicare funds.[3]

42 C.F.R. § 411.24. Because the nature of the inquiry here – whether there is a primary payment (like a settlement award) from which CMS is entitled to be reimbursed – generally involves "routine, standard and unbiased" evidence, the court determines that the second *Mathews* factor also does not weigh in favor of the plaintiff. *See Mathews*, 424 U.S. at 344-45 (noting that "procedural due process rules are shaped by the risk of error inherent in the truthfinding process as applied to the generality of cases, not the rare exceptions").

Finally, the court considers the "public interest" implicated by these proceedings, including "the administrative burden and other societal costs that would be associated with requiring, as a matter of constitutional right" that CMS hold a hearing prior to attempting to collect from primary payers pursuant to the MSP. *See Mathews*, 424 U.S. at 347. The government clearly has a broad interest in "conserv[ing] scarce fiscal and administrative resources" and in collecting sums due to the federal treasury. *Phillips v. Comm'r of Internal Revenue*, 283 U.S. 589 (1931); *see also Mathews*, 424 U.S. at 348 (observing that the cost of additional procedural safeguards may "in the end come out of the pockets of the deserving since resources for . . . social welfare are not unlimited"). Indeed, in the context of the MSP, a fellow member of this court has noted that "fairness and justice would not be served by requiring taxpayers to bear the burden of paying for services that are covered by [primary payment] plans," like a settlement. *Blue Cross & Blue Shield Ass'n v. Sullivan*, 794 F. Supp 1166, 1178-79 (D.D.C. 1992) *rev'd in part on other grounds sub nom. Health Ins. Ass'n of Am. v. Shalala*, 23 F.3d 412 (D.C. Cir. 1994); *see also Wall v. Leavitt*, 2008 WL 4737164, at * 11 (E.D. Cal. Oct.

---

[3]      Under the rules set forth in the regulations, a person who "receives a primary payment," like a settlement award, is required to reimburse Medicare within sixty days. *Id.* § 411.24(h). If a person does not pay within the sixty-day period, "CMS may charge interest," which may accrue until reimbursement is made. 42 C.F.R. § 411.24(m)(2)(i)-(ii).

29, 2008) ("[I]n assessing the weight of the interests involved, Medicare's interests in maintaining a solvent medical care system for all senior Americans outweighs the temporary upset to individual beneficiaries."). In light of these considerations, the court concludes that the public interest weighs against finding that the plaintiff was deprived of a hearing at a meaningful time and in a meaningful manner.

Accordingly, after taking into consideration the factors outlined in *Mathews* as well as the fact that the plaintiff was given three levels of review at the agency level, *see* Compl. ¶¶ 16-18, the court concludes that the plaintiff was not deprived of his due process rights, *see Wall*, 2008 WL 4737164, at *15 (noting that generally the "[MSP's] law, policies, and procedures withstand facial due process attack").

### b. The ALJ's Denial of a Continuance Did Not Violate the Plaintiff's Due Process Rights

The plaintiff also argues that his due process rights were violated when the ALJ presiding over his appeal in the Office of Medicare Hearings and Appeals denied his motion to continue the hearing in order to allow his counsel a longer period of time to review the administrative record. Pl.'s Mot. at 10. The defendant maintains that the plaintiff was provided numerous and sufficient hearings at the administrative level, satisfying any due process concerns. Def.'s Cross-Mot. at 16-17.

Although "[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process," one of the factors that a court may consider is whether "denying the continuance will result in identifiable prejudice to defendant's case, and if so, whether this prejudice is of a material or substantial nature." *United States v. Burton*, 584 F.2d 485, 490 (D.C. Cir. 1978). Here, although the plaintiff asserts that he was given an insufficient period of time in which to adequately review the administrative record, Pl.'s Mot. at 10, he fails

to provide any "identifiable prejudice" that he suffered as a result of the shorter time period, *see generally* Pl.'s Mot. The plaintiff has not, for example, indicated that had he been given more time, he would have made different arguments or discovered material evidence from the administrative record. More importantly, any "identifiable prejudice" that the plaintiff suffered was subsequently cured by the *de novo* review of the Medicare Appeals Board, at which point the plaintiff was permitted to present any arguments or evidence which he may have previously felt unable to present. A.R. at 157; *see also U.S. v. Teresi*, 474 F.2d 759, 766 (7th Cir. 1973) ("[A]ny defect in the proceedings of the appeal board was cured by this full review of defendant's claims and could have resulted in no prejudice to him."). Upon these facts, the court holds that the plaintiff has not demonstrated that he was prejudiced to a degree that would constitute a violation of his right to due process.

## IV. CONCLUSION

For the foregoing reasons, the court denies plaintiff's motion for summary judgment and grants the defendant's cross-motion for summary judgment. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 24th day of March, 2011.

RICARDO M. URBINA
United States District Judge
